```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWN EVANS, #111-A-0681,

             Plaintiff,
                                        No. 13-CV-805(MAT)
     -vs-                               Decision and Order


CORRECTION OFFICER M.BALMER,
et al.,

             Defendants.
_____
```

## I. Introduction

Proceeding pro se, Shawn Evans ("Plaintiff"), instituted this action pursuant to 42 U.S.C. § 1983 alleging that while he was an inmate at Southport Correctional Facility ("Southport"), the Defendants, who are employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), used excessive force against him in violation of his Eighth Amendment rights.

Currently pending before the court is the Defendants' Motion for Summary Judgment. Dkt. # 71.

## II. Factual Background and Procedural History

On August 5, 2013, Plaintiff commenced this action by filing a complaint alleging that on January 24, 2013, while incarcerated at Southport, Corrections Officers ("CO") Balmer, Paluch, and Tillinghast opened his cell door and "used excessive

force by punching [him] repeatedly in the face[.]" Dkt. # 1 at 4.

On December 18, 2013 and January 30, 2014, Plaintiff amended his complaint re-stating the allegations from the first complaint, (Dkt. Nos. 5 at 4; 6 at 4), but later sought to have the amended complaints dismissed, leaving only the original complaint Dkt. # 7. This Court entered an Order on April 3, 2014, dismissing the first and second amended complaints without prejudice. Dkt. # 8.

Following discovery, the remaining defendants in this case filed a Motion for Summary Judgment on May 18, 2016. Dkt. # 71. After multiple extensions of time, Plaintiff has submitted his opposition papers to Defendants' motion (Dkt. # 100), to which Defendants have replied. Dkt. # 113.

In support of his opposition, Plaintiff has submitted a memorandum of law, statement of undisputed facts, and supporting exhibits Dkt. # 100. Plaintiff's "statement of undisputed facts" indicates that, with the exception of eleven paragraphs, he disputes all of Defendant's factual assertions set forth in their Rule 56 statement (Dkt. #, 100-1). However, he appears to admit all of Defendants' propounded material facts in his

memorandum of law, thus challenging Defendants' motion solely on legal grounds. Dkt. # 100.[1]

The pertinent facts are based on Defendants' Local Rule 56 statement and supporting materials, which include Plaintiff's deposition testimony.[2]

The matter is now fully briefed and the Court has considered carefully the parties' submissions. For the reasons that follow, the Defendants' Motion for Summary Judgment (Dkt. # 71) is granted in its entirety.

---

[1] The Court notes that, despite Plaintiff having instituted multiple civil rights lawsuits in this District, see 12-CV-365 and 12-CV-570, he has nonetheless failed to comply with the parameters of Loc.R.Civ.P. 56(a)(2), which states that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."

[2] Plaintiff does not challenge Defendants' submission of the deposition transcript, and references it in his own opposition papers. Mindful of the Court's obligation to liberally construe Plaintiff's pro se filings, the Court considers the transcript, including to the extent that it contradicts the allegations in the complaint. See AB ex rel. EF v. Rhinebeck Cent. Sch. Dist., 361 F.Supp.2d 312, 316 (S.D.N.Y. 2005) ("[J]ust as the court should not accept an affidavit that contradicts deposition testimony, it should also not allow inconsistent allegations made in a complaint to defeat summary judgment in the face of contradictory testimony either."); see also Thomas v. Westchester Cty. Health Care Corp., 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between plaintiff's allegations in her complaint and her sworn testimony], the court has no basis for accepting as true the vague statements in [the] complaint as opposed to [plaintiff's] sworn testimony . . . . "); Linares v. Albrith, No. CIV03CV1408, 2009 WL 799969, at *4 (N.D.N.Y. Mar. 25, 2009) (noting that discrepancy between verified complaint and subsequent deposition would not serve to defeat summary judgment in pro se prisoner case).

**A.   Facts Relevant to CO Balmer, CO Paluch, and CO Tillinghast**

Plaintiff alleges in his complaint that, on one occasion while incarcerated at Southport, CO Balmer, CO Paluch, and CO Tillinghast opened his cell door and "used excessive force by punching [him] repeatedly in the face[.]" Dkt. # 1 at 4. He filed a grievance concerning the January 24, 2013 incident, in which he stated that "several officers" assaulted him. Dkt. # 24 at 30.

Plaintiff later gave testimony under oath in connection with the instant proceeding on April 22, 2014. Dkt. 71-5 ("Evans Dep."). During his deposition, Plaintiff testified that on January 24, 2013, at approximately 4:01pm, CO Tillinghast opened and entered his cell and punched him one time in the eye. Id. at 11-12, 19. The alleged assault took place while CO Balmer, CO Paluch, and CO Tillinghast were responding to a neighboring inmate who was suicidal. The incident lasted approximately three seconds. Id. at 9-10, 15, 19. Plaintiff described his eye as "swollen," for a couple of days. Id. at 42.

Plaintiff further testified that CO Balmer and CO Paluch did enter his cell and did not touch him, despite his previous assertions that all three defendants opened his cell and committed the assault. Id. at 14, 21, 23.

His testimony indicated that, at the time Plaintiff was punched by CO Tillinghast, CO Balmer was removing a neighboring inmate from his cell to the infirmary. Id. at 10, 25. With respect to CO Paluch, Plaintiff recalled that he was the "area supervisor" and had "actual notice of . . . misconduct being used by one of his subordinates." Id. at 19-21.

The DOCCS Log Books indicate that on January 24, 2013 at 4:01pm, CO Balmer and CO Paluch escorted Plaintiff's neighboring inmate to the infirmary. Dkt. # 24 at 102.

In a letter to Paul Annetts, Correctional Facility Specialist dated February 4, 2013 (Dkt. # 71-5), Plaintiff stated that several Corrections Officers, including Balmer, Paluch, and Tillinghast, "removed [that] inmate to the clinic." Id.

Plaintiff's grievance, dated January 24, 2013, requested an interview in connection with the assault by all three defendants, but did not assert that CO Balmer and CO Paluch failed to protect him. Dkt. # 24 at 30.

Sick call notes from the morning following the alleged assault by CO Tillinghast reveal that Nurse Clement observed redness near Plaintiff's eye, which appeared to be self-inflicted. Dkt. # 24 at 39.

With regard to his alleged injuries, Plaintiff testified that his shoulder and back injuries referenced in the complaint

did not relate to the incident involving CO Tillinghast. Evans Dep. at 47. He further testified that he had no "outstanding injuries," and that this eye was better. Id.

    **B.    Facts Relevant to Nurse Fuller**

Plaintiff filed a grievance against Nurse Fuller on August 21,1 2012, in which he alleged that he called him derogatory names and slapped Plaintiff in the face. Dkt. # 71-4.

In his complaint, Plaintiff alleged that his back "went out" on August 21, 2012, and that he was transported to the infirmary by stretcher. When Nurse Fuller was required to transport Plaintiff from his cell, he allegedly slapped Plaintiff in the face. Plaintiff testified that Nurse Fuller "was mad because he had to come lift me up, take me to see the doctor." Dkt. # 1 at 3; Evans Dep. at 33. At deposition, however, Plaintiff stated that unknown escort officers responded and "had to carry [him] down the stairs on a stretcher." Evans Dep. at 35. Those officers left the clinic and returned to their posts. Id. at 36. According to Plaintiff, Nurse Fuller told another nurse to leave the infirmary, and, once alone with Plaintiff, slapped him on the left side of his face. Id.

Physician Assistant ("PA") Oakes treated Plaintiff immediately thereafter, but Plaintiff did not report the slapping to PA Oakes because he was "not going to do nothing" about it. Id. at 38. Plaintiff testified that the slap "wasn't

really bad. It didn't leave no marks or nothing, [the eye] was just puffy, that's it." Id. at 42.

Plaintiff testified that he had no injury as a result of that incident, or the incident involving CO Tillinghast. Id. at 47. He did not receive treatment for the injuries alleged, nor did he anticipate any future treatment for them. Id. at 47-48.

**III. Discussion**

   **A.   General Principles of Law**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "Where, as here, the nonmovant would bear the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by either (1) pointing to evidence that negates its opponent's claims or (2) identifying those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact." Barlow v. Male Geneva Police Officer, 434 Fed.Appx. 22, 25 (2d Cir. 2011) (summary order) (internal quotation and editorial marks and citation omitted). Because Plaintiff is proceeding pro se, the court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotations omitted).

Plaintiff brings this action under 42 U.S.C. § 1983, which imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the constitution and laws." 42 U.S.C. § 1983. In other words, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

The merits of Plaintiff's specific claims are addressed as follows.

**B.   Failure to Intervene**

Plaintiff initially alleged in his complaint that CO Balmer, CO Paluch, and CO Tillinghast assaulted him by repeatedly punching him inside of his cell on January 24, 2013. Dkt. #1 at 4. Acknowledging that his sworn testimony contradicted the allegations in the complaint, see Evans Dep. at 15, Plaintiff now seeks to re-frame his allegations against CO Balmer and CO Paluch as a "failure to protect [him] claim" based on their presence in the area during Plaintiff's encounter with CO Tillinghast.[3] Dkt. # 100 at 2-3 (indicating that Plaintiff was "suing the other two defendants because they were there.")

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (quoting Anderson v. Branen, 17

---

[3] The Court interprets Plaintiff's claim as one alleging a failure to intervene. "Where, as here, a plaintiff alleges that an officer failed to intercede in a presently occurring assault perpetrated by another officer, the claim is properly analyzed under the standard . . . for failure to intervene in a use of excessive force, rather than under the Farmer standard for failure to protect a prisoner from a dangerous condition of confinement." Stephens v. Venettozzi, No. 13-CV-5779, 2016 WL 929268, at *14 (S.D.N.Y. Feb. 24, 2016), report and recommendation adopted sub nom. Stephens v. Venetozzi, No. 13 CIV. 5779, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016), and report and recommendation adopted, No. 13-CV-5779, 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016).

F.3d 552, 557 (2d Cir. 1994)). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).

In Figueroa v. Mazza, 825 F.3d 89, 107-08 (2d Cir. 2016) the Second Circuit held that the essential inquiry when evaluating a failure to intervene claim is whether "under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." 825 F.3d 89 at 107-08 (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988). The Circuit Court cautioned against any bright-line rule based on the duration of an alleged assault, reasoning that, "[i]n each case, the question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." Id. at 107.

Plaintiff testified that, on the date in question, CO Balmer, CO Paluch, and CO Tillinghast responded to a neighboring inmate who was suicidal "to prevent him from harming himself." Evans Dep. at 15. According to Plaintiff, the three defendants "responded to an incident of my neighbor hanging up [sic]." Id. at 9. CO Tillinghast then "backtracked, opened my cell, Tillinghast punched me in my eye and kept moving." Id. at 10. He recalled that the entire incident lasted about three seconds. Id. at 19. Plaintiff testified further, and it is undisputed on this record, that neither CO Balmer nor CO Paluch went into Plaintiff's cell on that date, and did not touch him. Id. at 14, 19, 21. It was not until Plaintiff's deposition that he suggested CO Balmer and CO Paluch were being sued based on an alleged failure to protect. Id. at 19, 23. Plaintiff did not grieve their involvement with respect to the incident. Id. at 23 ("there's no paperwork involved with this incident.")

Plaintiff has not articulated a basis upon which a reasonable trier of fact could conclude that either Corrections Officer had a realistic opportunity to prevent the alleged harm by CO Tillinghast, which consisted of a single strike, occurring over the course of three seconds. Evans Dep. at 10, 19. Even if the Court assumes that CO Tillinghast's actions were unlawful, Plaintiff has not presented or identified probative evidence in the record from which a reasonable factfinder could find in his

favor on his failure to intervene claim against the other Corrections Officer defendants. Plaintiff presents no evidence that CO Balmer or CO Paluch saw the altercation or had a realistic opportunity to prevent CO Tillinghast from striking Plaintiff during the three-second incident. To the contrary, Plaintiff has testified only that CO Balmer was outside of Plaintiff's cell when the alleged assault occurred, during which time CO Balmer was responding to a neighboring inmate. Evans Dep. at 13-17. With respect to CO Paluch, Plaintiff stated only that "he was there, he had knowledge of the incident, he did nothing about it." Evans Dep. 14-23. DOCCS Log Books likewise indicate that that on January 24, 2013 at 4:01pm, CO Paluch, along with CO Balmer, escorted Plaintiff's neighboring inmate to the infirmary. Dkt. # 24 at 102.

Plaintiff raised an identical claim in Evans v. Murphy, No. 12-CV-365, 2014 WL 4437771, at *9 (W.D.N.Y. Mar. 13, 2014), which was dismissed for Plaintiff's failure to establish that the defendants had knowledge and/or a reasonable opportunity to intervene in an alleged assault where he characterized his claims in a conclusory manner, and alleged that one defendant simply failed to "investigate the situation." Id.

Plaintiff's repeated assertions that CO Paluch is subject to liability one the sole basis that he was the "area supervisor," Id. at 21-23) are insufficient here, as they were

found to be in Plaintiff's previous litigation. See Evans, 2014 WL 4437771, at *9 ("Evans does not point to any evidence that Pulsifer possessed knowledge that Rozell and Reppert were going to punch him, but instead argues that Pulsifer did not investigate the situation or reprimand Rozell or Reppert after the alleged incident took place . . . . This is insufficient to maintain a claim based upon a failure to intervene or protect.")

On this record, Plaintiff does not proffer any evidence to raise a triable issue of fact as to whether CO Balmer and CO Paluch had a reasonable opportunity to intercede and prevent CO Tillinghast's alleged unlawful conduct. Dismissal of this claim is therefore warranted. See Raffaele v. City of N.Y., No. 13-CV-4607, 2017 WL 1040369, at *4 (E.D.N.Y. Mar. 16, 2017) (granting summary judgment to police officer defendants where there was no realistic opportunity to intervene in "very rapid acts" by another police officer during three-second encounter); see also, e.g., Tafari v. McCarthy, 714 F.Supp.2d 317, 342 (N.D.N.Y. 2010) ("The liquid throwing incident began and ended within a matter of seconds, an increment of time too 'sudden and brief' to give Defendants a 'realistic opportunity' to respond and intervene on behalf of the Plaintiff.") (quoting Cusamano v. Sobek, 604 F.Supp. 2d 416, 429 n.9 (N.D.N.Y. 2009)).

Finally, as discussed in further detail below, CO Balmer and CO Paluch cannot be liable to failing to intervene where the

alleged force was de minimis, and therefore not actionable. See Cicio v. Graham, No. 08CV534, 2010 WL 980272, at *5 (N.D.N.Y. Mar. 15, 2010).[4]

**C.  Excessive Force**

Claims of excessive force in violation of the Eighth Amendment have two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). To satisfy the first component, the plaintiff must show "that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Id. (internal quotation marks and citation omitted). Wantoness "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson v. McMillan, 503 U.S. 1, 7 (1992)). The objective inquiry, on the other hand, focuses on "the nature of the force—specifically, whether it was

---

[4] Alternatively, this claim is subject to dismissal based upon Plaintiff's failure exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), as there appears to be no dispute that he did not file a grievance against CO Balmer and CO Paluch for their alleged failure to intervene (Evans Dep. at 23). See Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) ("There being no evidence that a grievance ever was filed against Williams by Hill, the exhaustion requirement of the PLRA has not been satisfied, and no genuine issue of material fact stands in the way of summary judgment in her favor.")

nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (quoting Hudson, 503 U.S. at 7). While the severity of the injuries ultimately inflicted is not dispositive, see id., "de minimis uses of force are 'necessarily exclude[d] from constitutional recognition.'" Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Wilkins, 559 U.S. at 37).

Here, Plaintiff concedes that he suffered "no outstanding injuries," see Evans Dep. at 47; and the record is devoid of any competent evidence to demonstrate that Plaintiff suffered anything other than swelling in or near his eye. Id. at 42. Furthermore, the day following the incident, Plaintiff was examined by Nurse Clement at Southport, who opined that Plaintiff had a self-inflicted injury to the eye. Dkt. #24 at 39.

Plaintiff, who seems to recognize the deficiency in the alleged facts and evidence of record, opposes Defendants' motion on the basis that "the case law is clear that a single punch constitutes *not* a de minimis use of force and *is* actionable." Dkt. # 100 at 3, 14-17 (emphasis added). Fatal to Plaintiff's contention is that he has misstated the holdings of those cases, which actually support the opposite of his proposition. See Mayo v. Lavis, No. 11-CV-869, 2016 WL 2756545, at *7 (W.D.N.Y. May 12, 2016) ("even if Mayo properly exhausted his administrative

remedies, his Eighth Amendment claim would fail because even assuming that Kelly pushed Mayo onto the bench, punched him in the face, and threw him on the floor, the force used was de minimis under the caselaw."); Jackson v. Monin, No. 13-CV-4, 2016 WL 3661942, at *1 (W.D.N.Y. July 11, 2016) (accepting allegations that plaintiff was grabbed, slapped, and shoved as true, there was no viable Eighth Amendment claim because the alleged force used was, at most, de minimis); McEachin v. Bek, No. 06-CV-6453, 2012 WL 1113584, at *7 (W.D.N.Y. Apr. 2, 2012) (allegations that inmate was struck three times with a closed fist de minimis) (citing Romaine v. Rawson, 140 F.Supp.2d 204, 212 (N.D.N.Y. 2001) ("[T]he prisoner was unable to show any serious injury resulting from Defendant's strikes to his head. The testimony at trial indicated that the strikes to his head were either three open-fisted slaps or three-closed fisted strikes. Regardless of whether the strikes were open-fisted or closed-fisted, given the lack of any visible injury to Plaintiff, the court concludes that Defendant's application of force against Plaintiff was de minimis.")).

Thus, even crediting Plaintiff's version of events, summary judgment is appropriate for the Defendants because the force applied by CO Tillinghast was not sufficiently serious. See Taylor v. N.Y. Dep't of Corr., No. 10 CIV. 3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (collecting cases).

Likewise, Plaintiff's claim that Nurse Fuller slapped him in the face must fail as a matter of law. According to Plaintiff, he sought treatment on August 21, 2012 for a back injury. Nurse Fuller allegedly slapped Plaintiff because he had to retrieve Plaintiff from his cell to transport him to the infirmary. Dkt. # 1 at 3; Evans Dep. at 7, 33. Assuming the truth of Plaintiff's allegation that Nurse Fuller slapped him on the left cheek, he does not state a claim of excessive force under the Eighth Amendment. It is undisputed that Plaintiff did not report the slap at sick call immediately after the incident, and he testified that the slap "wasn't really bad. It didn't leave no marks or nothing, [the eye] was just puffy, that's it." Evans Dep. at 42. He further testified that he had no injury as a result of the slapping incident, and has not received any treatment for his eye and did not anticipate any future treatment. Id. at 47.

Where, as here, the conduct alleged involves an open-handed slap that caused no lasting injury, the objective component of an Eighth Amendment excessive force claim cannot be met. See Wright v. Goord, 554 F.3d at 269; Jones v. Goord, No. 05-CV-0182, 2008 WL 904895, at *4 (W.D.N.Y. Mar. 31, 2008) (finding an open-handed slap to be "considered a de minimis use of force, especially in light of" the lack of any lasting injury); see also Hogan v. Fischer, No. 09-CV-6225, 2012 WL 4845609, at *5

(W.D.N.Y. Oct. 10, 2012) (citing Jones favorably and reaching the same conclusion in case where "a light slap" was alleged), vacated in part on other grounds, 738 F.3d 509 (2d Cir. 2013). Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim as to Nurse Fuller.

For all of these reasons, Plaintiff fails to raise a triable issue of fact as to his excessive force and failure to intervene claims against the named defendants. Defendants are therefore entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56, and the complaint is dismissed in its entirety.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment (Dkt. # 71) is **GRANTED** in its entirety. The Clerk is directed to enter judgment in favor of Defendants and to close this case.

ALL OF THE ABOVE IS SO ORDERED.

                                                S/ MICHAEL A. TELESCA
                                    HONORABLE MICHAEL A. TELESCA
                                    UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
       March 24, 2017